John Houston Scott (SBN 72578)
Lizabeth N. de Vries (SBN 227215)
**SCOTT LAW FIRM**
1375 Sutter, Suite 222
San Francisco, CA 94109
Tel: 415.561.9600
Fax: 415.561.9609
john@scottlawfirm.net
liza@scottlawfirm.net

Randolph Daar (SBN 88195)
**ATTORNEY AT LAW**
506 Broadway Street
San Francisco, CA 94133
Tel: 415.986.5591
Fax: 415.421.1331
rdaar@pier5law.com

Attorneys for Plaintiff,
NELSON GONZALES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NELSON GONZALES,<br><br>  Plaintiff,<br>v.<br><br>MICHAEL NOVOSEL, R. CARLINO, S. CURMI, A. BORDIGON, J. FUKUSHIMA and DOES 1-25, inclusive.<br><br>  Defendants. | Case No.: CV 07-04720 CRB<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY ADJUDICATION**<br><br>[Fed. R. Civ. P. 56(c), 56(d)]<br><br>Date:   September 19, 2008<br>Time:  10:00 a.m<br>Place:  Courtroom 8, 19th floor<br>Judge: Hon. Charles R. Breyer |

# TABLE OF CONTENTS

PAGE

Questions Presented ........................................................................................................1

Introduction....................................................................................................................1

Statement of Facts..........................................................................................................1

    A. The Incident Began as a High-Speed Chase ........................................................1

    B. The Chase Ends When Gonzales' Car Crashes and Novosel Approaches the Vehicle on Foot.................................................................................................2

    C. Officer Novosel Shot an Unarmed Gonzales Five Times in the Back..................3

    D. Officer Novosel's Justification for the Lethal Force is Not Reasonable Given His Training and Experience ...................................................................4

Argument .......................................................................................................................5

    A. This court may make a legal determination on this summary adjudication motion that defendant Officer Novosel is liable for violating Plaintiffs' civil rights ...........................................................................................................5

    B. Officer Novosel's Shooting of Mr. Gonzales Constituted Excessive Force in Violation of His Constitutional Rights as a Matter of Law................................6

        1. Officer Novosel's Use of Deadly Force Was Not Objectively Reasonable Under the Facts and Circumstances Presented .......................6

        2. Qualified Immunity Fails Because a Constitutional Right Was Violated and this Right Was Clearly Established ........................................9

Conclusion ...................................................................................................................11

# TABLE OF AUTHORITIES

PAGE

**Cases**

*Acosta v. City and County of San Francisco*, 83 F.3d 1143 (9th Cir. 1996), ................... 6

*Acosta v. Hill*, 504 F.3d 1323 (9th Cir. 2007). ................................................................ 6

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) .................................................... 5

*Blanford v. Sacramento County*, 406 F.3d 1110 (9th Cir. 2005), ................................... 7

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................ 5

*Conklin Bros. of Santa Rosa, Inc. v. U.S.*, 986 F.2d 315 (9th Cir. 1993) ......................... 5

*Graham v. Connor*, 490 U.S. 386 (1989). ................................................................. 6, 11

*Jackson v. City of Bremerton*, 268 F.3d 646 (9th Cir. 2001). .......................................... 7

*Saucier v. Katz*, 533 U.S. 194 (2001). .............................................................................. 9

*Scott v. Harris*, ___ U.S. ___, 127 S.Ct. 1769, 1777-1778 (2007) ..................... 6, 9, 10, 11

*Tennessee v. Garner*, 471 U.S. 1 (1985) ............................................................... 6, 10, 11

**Statutes**

Fed. R. Civ. P. 56 ............................................................................................................. 5

## QUESTIONS PRESENTED

**ISSUE:** Should the court grant partial summary judgment on the issue of liability against Officer Novosel for excessive force for firing his weapon five times and shooting Mr. Gonzales where (1) no disputed facts exist that Gonzales was unarmed when he was shot by Officer Novosel, and (2) no disputed facts exist that Officer Novosel unreasonably resorted to lethal force when he shot Mr. Gonzales?

## INTRODUCTION

Plaintiff Nelson Gonzales submits this motion for partial summary adjudication against Officer Michael Novosel individually, on the issue of liability only.

Plaintiff is not requesting that this Court decide issues of causation and damages on any of the claims. In conjunction with this Memorandum, Plaintiff has also filed a declaration of John H. Scott ("Scott Declaration") which authenticates the deposition testimony of defendant Novosel.

## STATEMENT OF FACTS

### A. The Incident Began as a High-Speed Chase

On August 19, 2006, at approximately 1:00 a.m., Officer Novosel and his partner, Officer Torr, were on the graveyard shift, covering an "unincorporated area of Redwood City." (Novosel Depo[1], 45:13-14; 58:7) Officer Novosel heard on the Sherriff's radio that "one of our Deputies was attempting to catch a high-speed vehicle on Page street[.]" (48:15-19) The description over dispatch was a deputy attempting to locate a "white" car. (57:15-17) The deputy was not yet "in pursuit" of the vehicle.[2] (52:22)

If the vehicle came in his direction, Officer Novosel planned to "make a traffic" stop. (56:10-17) The vehicle, a Honda driven by the Plaintiff Nelson Gonzales, was traveling

---

[1] All page citations appearing hereafter are contained in the Novosel Deposition. (Exhibit A to Scott Declaration)

[2] "Pursuit" technically means that the officer's red lights and siren are activated, and the target vehicle is not coming to a stop. (56:17-20)

- 1 -

"approximately 80 miles an hour" when it passed Officer Novosel. Novosel and his partner proceeded to follow it. (59:11-60:4)

A high-speed chase ensued on the 101 Southbound and proceeded on adjacent residential streets in or near Atherton, California. Officer Novosel drove while Officer Torr provided updates of their location to dispatch. (60:20-153:1) The chase winded throughout numerous local surface streets before Gonzales' Honda crashed where Oak Grove dead-ended into Green Oaks forming a "T" intersection. (156:6-10)

### B. The Chase Ends When Gonzales' Car Crashes and Novosel Approaches the Vehicle on Foot

When Gonzales came to a stop at the end of the "T" intersection, Novosel observed that the Honda "ended up in the brush area." (151:10; 157:20-23) Officer Novosel stopped his patrol car "about ten feet" behind Gonzales' vehicle. (156:16-19) There were "boulders…in between" the Honda and the CHP cruiser. (160:19-25) The front wheel of his CHP cruiser was "close" to the edge of the roadway. (160:11-12) Officer Novosel did not have **any** conversation with Officer Torr before getting out of the vehicle, and exited immediately upon putting the vehicle in park. (161:8-162:23) When Officer Novosel exited the car he unholstered his weapon and carried it in his right hand. (172:14-18)

At that moment, Officer Novosel chose **not** to effect a felony-stop position[3], formulating a different plan instead. (169:6-24) At the time, Officer Novosel did not know where Officer Torr was. (193:16-17) However, he felt that his "**best approach** was to approach the driver, maybe **by surprise**, and apprehend him right then and there." (171: 6-12) His plan was "to make [Mr. Gonzales] realize that it's time to give up." (186:8-9)

Officer Novosel then ran "**towards the driver's-side door**." (165:19-23) He was on the left side of the vehicle, "approximately 5 feet from the driver's door." (174:15-18) He felt his

---

[3] A "felony-stop position" is where the officer stands behind the protection of an open CHP cruiser door, and from that position, issues directions to the driver in order to control their movements to effect their arrest in a safe manner. Staying behind the door affords "more protection" from potentially being shot at. (169:6-24)

- 2 -

position "was a **safe** spot." (198:21) Officer Novosel "could hear the [Honda] engine revving at a high rate." (164:13-15) He observed Mr. Gonzales "sitting in the driver's seat" with the driver's side window "**open**." (164:17-18; 185:19) Mr. Gonzales "looked at [Officer Novosel] one time . . . and then he went back to looking straight ahead again." (185:9-14)

Officer Novosel observed the front of the "Honda going left to right . . . and then back and forth again." It moved a matter of "inches . . . maybe inches to feet." (176:19-177:3) It went forward "may a foot or two . . . then it went back again." (178:2-8) The car went back and forth "at least six times." (179:24)

Officer Novosel saw that Mr. Gonzales's "left hand [was] on the steering wheel and . . . his right hand appear[ed] to [be] going back and forth." (182:23-25) He repeatedly yelled at Mr. Gonzales "'Stop the car. Get out of the car. Turn the car off' . . . 'Get the fuck out of the car. Turn the fucking car off.' (184:15-20) This lasted "**no more than ten seconds.**" (184:24)

Officer Novosel then grabbed Mr. Gonzales's "**left** shoulder with [his] **left** hand," while still pointing a gun at Gonzales with his right hand. This was to "make him realize that we're here." (186:24-25) At that point, Officer Novosel's belt buckle is approximately "a foot" from the body of the Honda. (189:1-4) Upon being grabbed, Mr. Gonzales' left hand remained on the steering wheel. (191:11-13) Officer Novosel did not succeed at pulling Mr. Gonzales' hand off the steering wheel. (192:22-25)

### C. Officer Novosel Shot an Unarmed Gonzales Five Times in the Back

Officer Novosel held his weapon "raised above my left hand -- or left arm" and it "was pointing at the driver." The gun was "pretty much parallel . . with the driver." (189:22-190:10) The safety was off because "the safety is never on." (190:18-25)

Officer Novosel did not consider retreating to a felony-stop position. (201:6-8) He "just felt that **the time was then and there to stop [Mr. Gonzales].**" (201:15-16)

Officer Novosel fired "**five times**" in quick succession. (203:9-14) Officer Novosel moved "towards the left rear door of the vehicle" as he fired the shots. (204:5-16) The car still "revved" and "dust [was] still coming up." (205:15-20) He **does not recall** when he let go of Mr. Gonzales' shoulder. (206:10-16)

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION

Officer Novosel aimed the first shot "at his **head**." (212:8) The "fourth or fifth shot . . . shattered the left rear passenger window." (208:18-20) That's when Officer Novosel stopped shooting. Officer Novosel stated "**I just stopped. I don't know why.**" (208:20-25) "[T]he shattering of the window . . . hearing that sound, I think **kind of** put everything in perspective, so that's when I stopped." (209:16-18)

After the window shattered, Officer Novosel stopped and "saw [Mr. Gonzales] slumped in the driver's seat." (211:5-8) "[H]is head was down." (213:8-9) Officer Novosel noticed the engine had stopped revving. (213:20-23) Officer Torr came over, opened the door, and removed Mr. Gonzales from the vehicle. Mr. Gonzales was "still making noise; he was still breathing." They handcuffed him. (215:9-216:20) When they placed Mr. Gonzales "face down," Officer Novosel noticed "blood on his shirt, on the back." (217: 5-7)

### D. Officer Novosel's Justification for the Lethal Force is Not Reasonable Given His Training and Experience

Officer Novosel states he was "definitely in fear for my life and my partner's life[.]" (200:22-23) His only justification for the use of deadly force was based on "self-defense of myself and my partner." (230:1) Yet, he testified that: "The last time I saw him, (his partner) he was getting out of the passenger's door." (Novosel Depo. 168:1-2)

Officer Novosel had been on the force for approximately eight years at the time of the incident. (26:18-29:1) Officer Novosel was trained on the use of deadly force. He also had training on the escalation of force. He did not consider using his asp (baton). (229:1-3; 231:11-13; 233:1-234:10) Officer Novosel was trained "not to stand in front or behind the car" when in a position other than the felony-stop position. (197:19-23)

//
//
//
//
//

- 4 -
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION

# ARGUMENT

### A. THIS COURT MAY MAKE A LEGAL DETERMINATION ON THIS SUMMARY ADJUDICATION MOTION THAT DEFENDANT OFFICER NOVOSEL IS LIABLE FOR VIOLATING PLAINTIFFS' CIVIL RIGHTS

Under Fed. Rule Civ. Pro. 56(c), a motion for summary judgment will be granted "if there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Conklin Bros. of Santa Rosa, Inc. v. U.S.*, 986 F.2d 315, 316 (9th Cir. 1993). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses which demonstrate that absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its initial burden, the opposing party must then "set forth specific facts showing that there is a genuine issue for trial" in order to defeat the motion. Fed. R. Civ. P. 56(e); *Anderson, supra*, 477 U.S. at 250.

In addition, judgment as a matter of law may be rendered as to a particular issue, which may be "the issue of liability alone though there is a genuine issue as to the amount of damages." FRCP 56(c), 56(d).

Here, there can be no genuine issue as to any material fact on the issue of liability. Based on Officer Novosel's own testimony the force used was excessive. His only "justification" for shooting is that he was "in fear for my life and my partner's life[.]" (200:22-23) Based on his own testimony, this was not a "reasonable" belief based on the circumstances and facts presented.

//
//
//
//
//

### B. OFFICER NOVOSEL'S SHOOTING OF MR. GONZALES CONSTITUTED EXCESSIVE FORCE IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS AS A MATTER OF LAW

#### 1. Officer Novosel's Use of Deadly Force Was Not Objectively Reasonable Under the Facts and Circumstances Presented

All claims of excessive force in making an arrest or other "seizure" of the person are properly analyzed under the objective reasonableness standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 397 (1989), *Tennessee v. Garner*, 471 U.S. 1 (1985); *Scott v. Harris*, 127 S.Ct. 1769, 1777-1778 (2007). "All that matters is whether [the police officer's] actions were *reasonable*." *Acosta v. Hill*, 504 F.3d 1323 (9th Cir. 2007).

A police officer may not seize an unarmed, nondangerous suspect by shooting him dead. *Garner*, supra, 490 U.S. at 11. In *Garner*, an officer responding to a night "prowler" call from dispatch arrived on scene to see someone run across a backyard nearby. The officer could see the suspect's face and hands and saw no sign of a weapon. After the officer called out "police, halt," the suspect continued to scale the fence. Convinced that the suspect would otherwise elude capture, the officer fatally shot the suspect in the back of the head. *Garner, supra*, 471 U.S. at 3-4. In a three-day bench trial, the district court found, *inter alia*, that the officer's force used was not excessive. *Id.* at 5. The 6th Circuit Court of Appeals affirmed as to the officer's liability, as good faith reliance on the statute entitled him to qualified immunity. *Id.* It remanded for reconsideration of possible city liability under the recent *Monell* decision. *Id.* On remand, the district court found, *inter alia*, the use of deadly force was constitutional. *Id.* at 6. The Court of Appeals reversed and remanded, reasoning that the killing of a fleeing suspect was a "seizure" under the Fourth Amendment. The State of Tennessee intervened to defend the statute. *Id.* at 7. On review, the Supreme Court held that the Tennessee statute giving the officer such authority was unconstitutional. It held that the use of deadly force to prevent the escape of an apparently unarmed suspected felon could not be used unless it was necessary to prevent the escape and the officer had probable cause to believe that the suspect posed a significant threat of death or serious physical injury to the officer or others. In *Acosta v. City and County of San Francisco*, 83 F.3d

1143 (9th Cir. 1996), an officer chased two male purse-snatching suspects (Pescon and Silva) down a street, who got into a waiting car. *Id.* at 1144. The officer fired two shots into the car, killing the driver (Acosta) instantly. *Id.* The jury found that the officer used **excessive force** in shooting Acosta and returned a verdict for plaintiffs. *Id.* at 1144-1145. Following the jury's award of damages, the district court granted the officer's motions for judgment on the merits as a matter of law and on the ground of qualified immunity. *Id.* at 1145. On review, the 9tt Circuit held that the grant of judgment for the officer as a matter of law was improper. *Id.* at 1147. It reversed the district court's grant of qualified immunity and judgment as a matter of law and reinstated the jury's verdict against the officer. *Id.* at 1149.

In *Blanford v. Sacramento County*, 406 F.3d 1110, 1115 (9th Cir. 2005), the Ninth Circuit described the reasonableness standard as requiring a balance between the nature and quality of the individual's Fourth Amendment interests against the countervailing governmental interests at stake. The balancing test examines the totality of the facts and circumstances in each particular case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." The reasonableness is judged from the perspective of a reasonable officer on the scene. *Jackson v. City of Bremerton*, 268 F.3d 646 (9th Cir. 2001).

A seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in defending himself or others. Thus, in order to prove an unreasonable seizure in this case, here, plaintiff must prove **by a preponderance of the evidence** that the Officer Novosel used excessive force when firing upon Mr. Gonzales.[4] Under the Fourth Amendment, a police officer may use such force as is "objectively reasonable" under all of the circumstances. In other words, the court must judge the reasonableness of a particular use of force **from the perspective of a reasonable officer on the scene** and not with the 20/20 vision of hindsight. *Id.*

---

[4] This is a civil case, not a criminal one. Plaintiff's burden of proof is by a "preponderance of the evidence," which means that the fact finder must be persuaded by the evidence that the claim is more probably true than not true.

- 7 -

In determining whether Officer Novosel used excessive force in this case, the court considers all of the circumstances known to the officer on the scene, including:

1. The **severity** of the crime or other circumstances to which Officer Novosel was responding;

2. Whether Mr. Gonzales posed an **immediate threat** to the safety of Officer Novosel or to others;

3. Whether Mr. Gonzales was **actively resisting** arrest or attempting to evade arrest by flight;

4. The **amount of time** and any changing circumstances during which Officer Novosel had to determine the type and amount of force that appeared to be necessary;

5. The **type and amount of force** used;

6. The availability of **alternative methods** to take Mr. Gonzales into custody or to subdue him; and

7. **Other** factors particular to the case.

(9th Circuit Model Jury Instruction 9.22)

In light of the factors discussed above, Officer Novosel's use of deadly force was not reasonable as a matter of law.

**First**, while any car stop may pose the potential risk that an officer will encounter an armed driver, Officer Novosel had no indications that Gonzales was armed. Nor had Gonzales been involved in any act of violence.

**Second**, when the pursuit terminated by Gonzales crashing his vehicle the situation dramatically changed. The vehicle was no longer an active threat to anyone. Although the front wheels were spinning, the vehicle was not appreciably moving. Officer Novosel observed that Gonzales was unarmed and therefore posed no immediate deadly threat.

**Third**, Gonzales was actively resisting. However, because Gonzales was unarmed and Novosel was positioned in a safe location in relation to the car, Gonzales did not pose an immediate deadly threat.

**Fourth**, the situation was unique in that Officer Novosel had time to assess the situation and consider nondeadly force options because (a) Novosel's vehicle was parked approximately 10 feet behind the Gonzales vehicle to thwart escape from the rear; (b) Gonzales' vehicle forward movement was obstructed and there was no appreciable forward or lateral movement; and (c) once the vehicle had stopped and was controlled by its environment, a time window was created for Novosel to consider nondeadly force options.

**Fifth**, Novosel used deadly force. He shot a suspect he knew to be unarmed in the back five times at close range.

**Sixth**, Novosel had several nondeadly force options: (a) to use arrest and control tactics to physically extract Gonzales from the vehicle; (b) to use chemical agents to blind, disorient and extract Gonzales from the vehicle; (c) to use an impact weapon to leverage and/or strike Gonzales, remove Gonzales' hands from the vehicle control mechanisms, and extract him from the vehicle; and (d) take a felony-stop position and coordinate nondeadly force options with his partner and other officers present to extract Gonzales from the vehicle.

**Seventh**, Novosel claims he resorted to deadly force to protect his partner. However, he did not know where his partner was. **It was not reasonable for Novosel to assume that his partner would place himself in a position that would expose him to immediate jeopardy.**

### 2. Qualified Immunity Fails Because a Constitutional Right Was Violated and this Right Was Clearly Established

In *Scott v Harris*, the Supreme Court reaffirmed the two step analysis announced in *Saucier v. Katz*. The threshold question is: Taken in the light most favorable to the non-moving party, do the facts alleged show the officer's conduct violated a constitutional right? *Scott v Harris, supra*, 127 S.Ct. at 1774. In *Saucier* the court found, as a matter of law, a shove to a protester did not constitute a violation of the Fourth Amendment, i.e., excessive force. *Saucier v. Katz*, 533 U.S. 194 (2001). There was not a factual dispute as to the amount of force used or the circumstances in which it was used.

In *Scott*, the court found that the videotape of a car chase "clearly contradicts the version of the story" told by the plaintiff/respondent. The Plaintiff's story was "utterly discredited" by the record (videotape) so that no reasonable jury could believe him. Accordingly, there being no genuine issue of material fact in dispute, the court could decide the issue of excessive force as a matter of law. *Id.* at 1776.

In *Scott*, the court then went on to distinguish the facts (a car chase where a police vehicle bumped a fleeing car causing it to go off the road, overturning, and crashing) from *Tennessee v. Garner*, 461 U.S. 1 (1985). *Garner* held that it was unreasonable, as a matter of law, to kill an unarmed burglary suspect by shooting him in the back of the head while he was running away on foot. The officer could not reasonably believe that the suspect posed any threat and never attempted to justify his actions on any basis other than the need to prevent an escape. *Id.* at 21.

For purposes of this motion, the Plaintiff is asking the court to find that the amount of force used by the defendant Novosel was excessive based on his own testimony. Here, there is not a videotape. Rather, the plaintiff is asking the court to consider the defendant's version of the facts, i.e., his own testimony.

In *Garner*, the court prescribed certain preconditions that must be met before the officer's actions can survive Fourth Amendment scrutiny: (1) The suspect must have posed an immediate threat of serious physical harm to the officer or others; (2) deadly force must have been necessary to prevent the escape; and (3) where feasible the officer must have given the suspect some warning. *Scott v Harris, supra*, 127 S.Ct. at 1777. In *Scott*, the court noted that this test did not apply to car chases for obvious reasons. Id. However, the *Garner* test does apply to this case since the plaintiff was shot after the chase was over.

**First**, the undisputed facts show a constitutional right was violated because Officer Novosel used excessive force to shoot an unarmed man. At the time Novosel fired, Gonzales did not pose a serious risk of serious injury, much less a risk of fatal injury. It was not reasonable for Novosel to dramatically escalate the situation by resorting to deadly force.

**Second**, the Fourth Amendment right to be free from excessive force is clearly established. If a law enforcement official uses deadly force in the course of an arrest,

- 10 -

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION

investigatory stop, or other "seizure" of a free citizen which is objectively unreasonable, this violates the clearly established right to be free from unreasonable search and seizure under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386 (1989). See, *Tennessee v. Garner*, 471 U.S. 1, 17-22 (1985)(claims of excessive force to effect arrest analyzed under a Fourth Amendment standard); see also, *Scott v. Harris*, ___U.S. ___, 127 S.Ct. 1769, 1777-1778 (2007) (applying the Fourth Amendment objective reasonableness standard).

The Fourth Amendment objective reasonableness standard was clearly established at the time Officer Novosel shot the unarmed Nelson Gonzales.

### CONCLUSION

For the foregoing reasons, plaintiff is entitled to partial summary adjudication.

Dated: August 14, 2008

By: /s/ John H. Scott
JOHN HOUSTON SCOTT,
Attorneys for Plaintiff NELSON GONZALES