IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NELSON GONZALES,<br><br>       Plaintiff,<br><br>  v.<br><br>MICHAEL NOVOSEL, et al.,<br><br>       Defendants.<br>_____/ | No. C 07-04720 CRB<br><br>**ORDER GRANTING DEFENDANTS CARLINO, CURMI, BORDIGON, AND FUKUSHIMA'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

   This case stems from two different incidents that occurred five days apart: a violent interaction between Nelson Gonzales ("Plaintiff") and four South San Francisco police officers, Defendants Ron Carlino, Sean Curmi, Anthony Bordigon, and Jason Fukushima ("Hotel Defendants") at a hotel on August 14, 2007, and a high-speed chase involving Plaintiff and Defendant Michael Novosel ("Defendant Novosel") on August 19, 2007. Plaintiff moves for partial summary judgment on his claim involving Defendant Novosel's liability for injuries resulting from the car chase on August 19. The Hotel Defendants move for summary judgment on Plaintiff's claim stemming from the events at the hotel on August 14, or, alternatively, summary adjudication on the issue of their liability for Plaintiff's injuries arising from the car chase on August 19.

**BACKGROUND**

**I.     The Hotel Incident: August 14, 2007**

Plaintiff checked into the South San Francisco La Quinta Inn on August 13, 2007. Plaintiff stayed at various hotels once in a while to spend some private time away from his family. See Gonzales Depo. at 21:3-5. While Plaintiff recalls checking in to the La Quinta on that evening, he does not remember anything else, besides some brief "flashbacks" of what happened that day. See id. at 22:8-27:21. The details of the night of August 14 are provided by the depositions of the four officers who were at the scene.

Plaintiff rented a room for one night but failed to check out of his room at the appropriate time the next day. See Curmi Decl. at 1:10-15. When the concierge, Michael Mapalo, contacted Plaintiff to ask him to leave the hotel or pay for an extra night, "he appeared confused and disoriented." See id. at 1:15-17. Mapalo called Plaintiff two additional times. After receiving no answer the third time, he sent a maintenance worker to Plaintiff's room, who told Mapalo that the room was locked with the deadbolt from the inside. See id. at 1:19-26. At approximately 9:35pm, Officers Anthony Bordigon and Sean Curmi responded to a report of a subject refusing to leave the hotel premises or pay for his room. See Bordigon Decl. at 1:8-10; see also Curmi Decl. at 1:10-11.

Officers Bordigon and Curmi knocked on Plaintiff's hotel room door, announced themselves, and explained to Plaintiff that he was required to leave the premises. See Curmi Decl. at 2:1-6. Plaintiff was "argumentative and irrational" and refused to open the door. See id. at 2:5-6. Both officers believed that Plaintiff was under the influence of a controlled substance because he was speaking very fast and was not making sense. See id. at 2:8-10. When Officer Bordigon told Plaintiff that they would have to use a key to enter the room, Plaintiff became "extremely agitated" and told the officers that he had a gun and would "use it" on them. See id. at 2:10-12; see also Bordigon Decl. at 1:15-16. Based on this statement, Officer Curmi called for back-up, and Sergeant Ron Carlino and Officer Jason Fukushima arrived on the scene, while Sergeant Wall, Officer Kalagayan, and Officer McHale were

2

United States District Court
For the Northern District of California

1  stationed outside of the hotel in case Plaintiff jumped out the window.  See Curmi Decl. at
2  2:13-17.
3        After attempting to negotiate with Plaintiff, Officer Bordigon and Sergeant Carlino
4  told Plaintiff that they were going to enter the room, as they had procured a key that would
5  unlock the deadbolt.  See id. at 2:22-25.  Plaintiff responded that if the police came into the
6  room, they were going to need "good luck."  See id. at 2:25-26.  When Officer Bordigon
7  asked Plaintiff what he meant, Plaintiff responded, "If you come in here, you're going to
8  need good luck!"  See id. at 2:26-28.  After the officers unlocked the deadbolt and struggled
9  to open the door when Plaintiff used his body weight to keep it closed, Plaintiff yelled "I
10 have enough dynamite in here to blow up the whole building!"[1]  See id. at 3:1-9; see also
11 Carlino Decl. at 2:2-3.  The police were eventually able to open the door, and saw Plaintiff
12 standing in the dark room in a "boxer's stance."  See Curmi Decl. at 3:10-12.  What followed
13 was a violent encounter between Plaintiff and the four police officers as the officers
14 attempted to subdue Plaintiff.
15       Sergeant Carlino was the first to enter the room; when Plaintiff lunged at him, Carlino
16 delivered a single strike with his right hand to Plaintiff's face.  See Carlino Decl. at 2:6-13.
17 The other three officers entered the hotel room, and Plaintiff began throwing punches in all
18 directions.  See Curmi Decl. at 3:17.  The four officers attempted to force Plaintiff to the
19 ground, but Plaintiff struggled violently to break free.  See Carlino Decl. at 2:19-20; see also
20 Fukushima Decl. at 2:7-8.  When Plaintiff grabbed Officer Curmi's uniform sleeve and tried
21 to pull him down to the floor, Curmi feared that Plaintiff would use his weight advantage to
22 force him to the ground and then "delivered four to six closed fist distraction blows" to
23 Plaintiff's face and head.  See Curmi Decl. at 3:25-28.  Plaintiff did not heed the officers'
24 constant commands to stop resisting and put his hands behind his back.  See id. at 4:6-7.  The
25 officers were able to force Plaintiff down onto one of the beds, but still had difficulty

---

[1] The officers have somewhat differing testimony as to what exactly Plaintiff said regarding the dynamite.  Fukushima states that Plaintiff said, "Are you fucking crazy, I've got dynamite!"  See Fukushima Decl. at 2:3-4.  Bordigon states that Plaintiff said, "I have a lot of dynamite in here!  If you come in, I have enough to blow us all up!"  See Bordigon Decl. at 1:19-20.  However, their testimony is consistent in that they all reported that Plaintiff stated that he had dynamite.

3

subduing him; Curmi tried to "deliver a single knee strike" to Plaintiff's shoulder, but ended up striking him on the head when Plaintiff jerked his head up. See id. at 4:3-11.

Plaintiff continued to try to push himself up off of the bed. See id. at 4:13-14. Officer Curmi then sprayed Plaintiff in the eye with Oleoresin Capsicum (pepper spray); the first spray had no effect on Plaintiff, but a second spray subdued him, which allowed Officer Fukushima to handcuff Plaintiff. See Fukushima Decl. at 2:10-11. Plaintiff continued to scream and resist violently. See Curmi Decl. at 4:20-22. Sergeant Wall then entered the room with a body restraining device, in which the officers placed Plaintiff; who at this point began to relax. See id. at 4:22-28.

The officers stated that Plaintiff appeared to be under the influence of drugs, and displayed incredible strength and extraordinary pain tolerance throughout the struggle. See Bordigon Decl. at 2:10-14; Curmi Decl. at 4:12-13; Carlino Decl. at 1:15-16. After the officers had Plaintiff under control, his demeanor changed abruptly and he began speaking in a child-like voice, saying things like "Nelson sleepy," "God forgives you Nelson," and "God loves you, Nelson." See Bordigon Decl. at 2:7-9; see also Carlino Decl. at 3:5-7; see also Curmi Decl. at 4:26-28.

Paramedics transported Plaintiff to Mills-Peninsula Hospital, where he was involuntarily admitted because the emergency room doctor found Plaintiff to be "medically unstable, partly because of the psychosis." See Gianotti Depo. at 86:1-11. Dr. Alan Gianotti, the emergency room doctor who assessed Plaintiff, stated in his deposition that because it was hospital policy not to take patients who were in police custody (unlike county hospitals, which usually have separate floors for incarcerated patients), Plaintiff was "un-arrested" and admitted involuntarily. See id. at 83:2-11; see also Ex. B, p. 17.

Dr. Gianotti decided that it was necessary to restrain Plaintiff both physically and chemically. See Gianotti Depo. at 25:20-25. Dr. Gianotti examined Plaintiff and found that he was "acutely psychotic" and that his condition had been caused by illegal drug use. See id. at 88:23-90:4. A CT scan of Plaintiff's head came back negative, with no injuries or abnormalities shown. See id. at 58:18-22. After being stabilized, Plaintiff was transferred to

4

1  the Intensive Care Unit, then to the Transitional Care Unit ("TCU"), where he stayed until
2  August 18, 2007. See id. at 89:8-9, 103:7-14, 21-24. During his stay in the TCU, hospital
3  staff ordered a psychiatric evaluation to determine if Plaintiff was a danger to himself or
4  others. See id. at 64:12-65:12; see also Ex. B, p. 25-34. The hospital determined that
5  although Plaintiff had previously been suicidal, he was currently neither dangerous nor
6  gravely disabled and discharged him into his mother's care, but noted that Plaintiff should
7  contact his psychiatrist upon release. See Ex. B, p. 7, 24.

## II.     The Car Chase: August 19, 2007

The next day, on August 19, 2007, Plaintiff failed to comply with a traffic stop and then led a high-speed chase with San Mateo County Deputies and California Highway Patrol Officers. After Plaintiff's vehicle crashed into an intersection and became stuck in a rocky area, Officer Novosel, a California Highway Patrol officer, approached the driver's door in order to apprehend Plaintiff. See Novosel Decl. at 171:6-12. Novosel commanded Plaintiff to stop the car and exit the vehicle. See id. at 184:15-20. Plaintiff did not respond, and Novosel feared for his own life and his partner's life because it appeared as though Plaintiff might attempt to run over Novosel. See id. at 193:16-22. Novosel shot Plaintiff five times, resulting in serious injuries to Plaintiff. See id. at 203-204; see also Compl. ¶¶ 16-17.

## PROCEDURAL HISTORY

Plaintiff filed a complaint for excessive force in violation of 42 U.S.C. § 1983 based on both the incident at the La Quinta Inn as well as the shooting involving Defendant Novosel. Plaintiff then filed a motion for partial summary judgment on his claim against Defendant Novosel, which was opposed pursuant to Federal Rule of Civil Procedure 56(f) on the ground that Defendant Novosel could not present evidence essential to oppose summary judgment because Plaintiff's deposition had been canceled after only three hours and was therefore incomplete. This Court rejected Plaintiff's motion. Plaintiff has now brought the same motion a second time. Additionally, the Hotel Defendants brought a motion for summary judgment on Plaintiff's claim stemming from the events at the hotel on August 14,

5

or, alternatively, summary adjudication on the issue of their liability for Plaintiff's injuries arising from the car chase on August 19.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact issue is "material" only if it could "affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact issue is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id.

A principal purpose of the summary judgment procedure is to "isolate and dispose of factually unsupported claims." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment has the burden to demonstrate the absence of genuine issues that concern material facts. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). This can be done by either producing evidence negating an essential element of the nonmoving party's claim, or by showing that "the nonmoving party does not have enough evidence of an essential element" to carry its ultimate burden at trial. See Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1106 (9th Cir. 2000). Once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 323-24. To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. See id. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987).

**DISCUSSION**

**I.     Plaintiff's Motion for Partial Summary Judgment**

Plaintiff's motion for partial summary judgment on the issue of liability against Defendant Novosel for excessive force is DENIED.  Defendant Novosel opposes Plaintiff's motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56(f), which provides that "[s]hould it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated" present evidence essential to oppose summary judgment, the trial court may deny the motion for summary judgment or continue the hearing to allow for needed discovery.  In making a Rule 56(f) request, the party opposing summary judgment "must make clear what information is sought and how it would preclude summary judgment."  Garrett v. City and County of San Francisco, 818 F.2d 1515, 1518 (9th Cir. 1987).  The party seeking additional discovery must show that it previously exercised due diligence to obtain the evidence it now seeks a continuance to obtain.  Brae Transp., Inc. v. Coopers & Lybrand, 790 F.2d 1439, 1442-43 (9th Cir. 1986).

At the time the motion was made, Plaintiff had failed to appear at the continuation of his deposition.  See Ex. A at 4:4-8.  Defendant's counsel had attempted to depose Plaintiff on several other occasions.  As a result, Plaintiff's deposition was incomplete and Defendants were unable to obtain the depositions of other law enforcement witnesses, as this Court stayed discovery involving the officers pending the completion of Plaintiff's deposition.  As excessive force claims turn on whether the "totality of the circumstances" justified the use of force, Plaintiff must have completed a full deposition before Defendant Novosel could properly oppose the arguments made in Plaintiff's motion for summary judgment.  See Curnow By and Through Curnow v. Ridgecrest Police, 952 F.2d 321, 325 (9th Cir. 1991).  The Court DENIES this motion because Defendant Novosel was unable to obtain evidence necessary to oppose the motion.

7

**II.     Defendants' Motion for Summary Judgment**

    A.     Excessive Force

Summary judgment on Plaintiff's claim of excessive force against the Hotel Defendants is GRANTED on the ground that the officers' actions were objectively reasonable. Excessive force cases generally go to the jury, but summary judgment is appropriate if the Court concludes, "after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994). Because Plaintiff does not remember his altercation with the four officers at the hotel, the facts are undisputed that the officers used force to respond to and protect themselves from Plaintiff's aggressive and continuous violent resistance, after hearing Plaintiff threaten to use a gun and dynamite and observing that Plaintiff was under the influence of illegal drugs. Given those facts, no reasonable juror could conclude that the officers used excessive force under the circumstances.

Plaintiff's argument that triable issues of fact exist regarding the objective reasonableness of the officers' actions has no merit. Plaintiff's Complaint alleges that the four officers rushed at him "en masse" and attacked him. See Compl. ¶ 9. However, as Plaintiff does not remember what happened on August 14, the depositions of the Hotel Defendants are the undisputed record of the events of that day and the reasons behind the officers' use of force. Therefore, there are no factual disputes to resolve and this Court finds that the officers' actions were objectively reasonable.

    B.     Qualified Immunity

Alternatively, Defendants' motion for summary judgment is GRANTED on the ground that the Hotel Defendants are entitled to qualified immunity. In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court established a two-prong analysis for qualified immunity cases. First, a court must determine whether – resolving all disputes of fact and credibility in favor of the party asserting the injury – the facts adduced at summary judgment demonstrate that the "officer's conduct violated a constitutional right." Id. at 201. If the court determines

8

that the conduct did not violate a constitutional right, the inquiry is over and the officer is entitled to qualified immunity.  Id.

If the court determines that the conduct did violate a constitutional right, Saucier's second prong requires the court to determine whether, at the time of the violation, the constitutional right was "clearly established."  Id.  A right is clearly established if its "contours" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Id. at 202 (citation omitted).  Even if the violated right is clearly established, the Saucier Court recognized that, in certain situations, it may be difficult for a police officer to determine how to apply the relevant legal doctrine to the particular circumstances he faces.  It held, therefore, that if an officer makes a mistake in applying the relevant legal doctrine, he is not precluded from claiming qualified immunity so long as the mistake is reasonable.  That is, if "the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense."  Id. at 205.

The Hotel Defendants are entitled to qualified immunity because their use of force was reasonable, and therefore they did not violate Plaintiff's Fourth Amendment right.  To determine whether a specific use of force was reasonable, the Court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake."  Graham v. Connor, 490 U.S. 386, 396 (1989) (internal quotation marks and citation omitted).  Relevant factors to this inquiry include, but are not limited to, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Id.  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments- in circumstances that are tense, uncertain, and rapidly evolving- about the amount of force that is necessary in a particular situation."  Id. at 396-97.

Viewing all evidence in the light most favorable to Plaintiff, the officers' force was reasonable.  While Plaintiff was only committing a minor crime by refusing to leave the hotel room, he did pose a threat to the officers and others and was very actively resisting arrest.

9

1 Plaintiff threatened the officers with a gun and claimed that he had dynamite inside the room,
2 which made it reasonable for the officers to think that Plaintiff posed a threat to them and
3 others in the vicinity of the hotel.  Furthermore, Plaintiff, who was apparently under the
4 influence of illegal drugs and fought off all four of the police officers with great force and
5 aggression before they were finally able to subdue him.  The officers had to make quick
6 decisions in a volatile situation about how to deflect Plaintiff's aggression and use the
7 amount of force necessary to subdue Plaintiff.  It is clear from the facts set forth in the
8 depositions that the punches, strikes, and use of pepper spray were reasonable methods to
9 subdue a violently resisting, and possibly armed, suspect who was under the influence of
10 illegal drugs.  Because their use of force was reasonable, the officers did not violate
11 Plaintiff's Fourth Amendment right.  Under Saucier, at this point the inquiry halts and the
12 officers are entitled to qualified immunity.

### C. Fourteenth Amendment

Plaintiff brought this excessive force claim under both the Fourth and Fourteenth Amendments.  See Compl. ¶ 25.  However, when a free citizen claims that law enforcement officials used excessive force in making an arrest, the claim must be analyzed under the Fourth Amendment, rather than under a substantive due process standard.  See Graham, 490 U.S. at 388.  Therefore, Plaintiff cannot bring this claim under the Fourteenth Amendment.

### D. Group Liability and Supervisorial Liability

Plaintiff argues that all four of the officers are liable for his injuries on the theory of group liability, and that Sergeant Carlino is liable on the theory of supervisorial liability. However, both of these arguments fail: because there has been no violation of Plaintiff's constitutional rights, none of the Defendants can be found liable on these theories.

### E. The Hotel Defendants are Not Liable for the Shooting

As summary judgment is granted on Plaintiff's claim for excessive force, it follows that the Hotel Defendants are not liable for the injuries Plaintiff sustained due to the shooting on August 19.  Plaintiff argues that his injury related to the shooting was caused in part by the Hotel Defendants' actions on August 14.  However, because this Court has determined

1  that the Hotel Defendants are not liable for any injuries Plaintiff sustained at the hotel, they
2  are therefore not liable for later injuries predicated on the August 14 incident.

### CONCLUSION

Plaintiff's motion for partial summary judgment is DENIED on the ground that Defendant Novosel did not have the facts necessary to oppose the motion. Defendants Carlino, Curmi, Bordigon, and Fukushima's motion for summary judgment is GRANTED because the undisputed factual record shows that the officers' actions were objectively reasonable, or, in the alternative, because the officers are entitled to qualified immunity.

**IT IS SO ORDERED.**



Dated: Oct. 15th, 2008

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE