1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  JOHN P. DEVINE, State Bar No. 170773
   Deputy Attorney General
3   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
4   Telephone:  (415) 703-5522
    Fax:  (415) 703-5480
5   Email:  John.Devine@doj.ca.gov

6  Attorneys for Defendant California Highway Patrol
   Officer Michael Novosel

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **NELSON GONZALES,** | Case No.  C-07-04720 CRB |
| Plaintiff, | **SUPPLEMENTAL TRIAL BRIEF BY DEFENDANT CHP OFFICER MICHAEL NOVOSEL** |
| v. | |
| **MICHAEL NOVOSEL, et al.,** | |
| Defendants. | |

**INTRODUCTION**

As previously raised at the pre-trial conference on October 21, 2008, the case of *Portsmouth Square, Inc. v. Shareholders Protective Committee*, 770 F. 2d 866, 869 (9th Cir. 1985), holds that where the final pretrial conference discloses undisputed facts entitling one of the parties to judgment as a matter of law, the Court may grant summary judgment *sua sponte*.

In this lawsuit, defendant CHP Officer Novosel is entitled to summary judgment because his actions were constitutional. Moreover, the reasonableness of his actions is judged against the backdrop of the law at the time. If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

At the pre-trial conference, counsel for defendant CHP Officer Michael Novosel stated that

no undisputed facts are present in this lawsuit.

In response to this statement, plaintiff's counsel contended that whether plaintiff's car – a white Honda Civic – was moving at the time of the shooting was a disputed fact, as reflected by the expert reports of Jon Jacobson and CHP Officer Krista Crocker. The following day these reports were forwarded to the Court.

The depositions of both individuals have now taken place. At the deposition of plaintiff's expert Jacobson, he revealed that he is a ballistics expert and in the last ten years has not conducted or testified in a matter involving a vehicle accident reconstruction. Regardless, the expert provided testimony that ***would not contradict*** the observations about the movement of the Honda at the time of the shooting by CHP Officer Novosel, who shot plaintiff, and San Mateo Sheriff's Deputy Peardon, who intended to shoot plaintiff.

As a result, this lawsuit continues to proceed without any disputed facts.

More generally, plaintiff unduly narrows the constitutional analysis required in this lawsuit by focusing on the actual movement of the Honda (*i.e.*, whether it moved a couple of inches or a couple of feet), as solely determinative of the reasonableness of the actions of Officer Novosel.[1] The well-established case law in this area looks more broadly to the immediate potential threat – not to the metaphysical certitude of that threat – to law enforcement officers, along with the totality of the circumstances. For instance, a police officer would not need to wait until a suspect armed with a gun actually pointed and shot it to justifiably defend himself with deadly force. In *Elliott v. Leavitt*, 99 F.3d 640, 644 (4th Cir. 1996), where police officers shot an intoxicated individual, who pointed a gun at them, while both seated and seat-belted in the front passenger side of the police car with his hands cuffed behind his back, the Court aptly emphasized,

> Before employing deadly force, police must have sound reason to believe that the suspect poses a serious threat to their safety or the safety of others. Officers need not be absolutely sure, however, of the nature of the threat or the suspect's intent to cause them harm – ***the Constitution does not require that certitude precede the act of self protection***.

(Emphasis added)

---

1. "[T]he mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 247-248.

In this lawsuit, at the time of the shooting, the Honda's engine was fully revved and its tires spinning, as Gonzales had one hand on the steering wheel and the other hand seemingly on the stick-shift, which led Officer Novosel to believe that Gonzales posed a serious threat to his safety and that of his partner. While a guy wire from a nearby telephone pole impeded Gonzales' efforts to escape, Officer Novosel did not know and could not have known if Gonzales was capable of entirely freeing the Honda from this impediment. What he did know was that Gonzales continually displayed a history of noncompliance, life endangering conduct, and dire efforts to avoid capture.

Against this legal and factual backdrop, Officer Novosel violated no constitutional right of Gonzales. Alternatively, even at a bare minimum, he is entitled to qualified immunity.

As earlier mentioned, if the law at the time did not clearly establish that Officer Novosel's conduct would violate the Constitution, then he should not be subject to liability or, indeed, even the burdens of litigation. *Brousseau v. Haugen*, *supra*, 543 U.S. at 198. In *Brousseau*, the Supreme Court reversed a denial of qualified immunity where the car had either just started or just begun to move. Thus, whether Gonzales' Honda was moving slowly or not moving at all at the moment of the shooting is not dispositive on whether the use of deadly force is clearly established in cases such as this. (See *Robinson v. Lehman*, 128 S.Ct. 1219, 170 L.Ed. 2d 52; 2008 U.S.Lexis 1251, granting petition for writ of certiorari, vacating the judgment, and remanding to the United States Court of Appeals for the Ninth Circuit for further consideration in light of *Scott v. Harris*, 550 U.S. __, 127 S.Ct. 1769, 167 L.Ed. 2d 686 (2007), in a lawsuit where two officers shot and killed the decedent as he sat in his car, with the tires shot out, surrounded by at least ten armed police officers and numerous police vehicles at the end of a pursuit and qualified immunity was denied by the Circuit Court)

Therefore, CHP Officer Novosel violated no constitutional right of plaintiff, or alternatively, he is entitled to qualified immunity for his actions.

///

///

///

# LEGAL ISSUES

# I

### THE TESTIMONY OF JOHN JACOBSON, WHO IS PLAINTIFF'S PURPORTED EXPERT ABOUT THE MOVEMENT OF THE HONDA, DOES NOT DISPUTE THE OBSERVATIONS OF CHP OFFICER NOVOSEL AND DEPUTY SHERIFF PEARDON

At the pre-trial conference, plaintiff's counsel argued that his expert John Jacobson contradicted the version of events by CHP Officer Novosel and Deputy Sheriff Peardon.

Initially, it bears mention that Mr. Jacobson might not even qualify as an expert in vehicle accident reconstruction, as his expertise appears only to reside in the field ballistics.  (Devine Decl. Ex. A - Curriculum Vitae of John Jacobson).  Indeed, from 1997 to the present day, he has neither done any type of vehicle accident reconstructions nor had any training regarding them.  (Devine Decl. Ex. B. - Jacobson Depo. 9:24-10:2; 10:8-18 )

Mr. Jacobson went to the scene of the incident on October 4, 2006, which was six weeks after the shooting and the towing of the Honda from the site of the incident.  Mr. Jacobson acknowledged that the towing could create the furrows he supposedly observed in October 2006, or the towing could have lengthened the furrows.  (Devine Decl. Ex. B. - Jacobson Depo. 43:3-16)

Additionally, even if the furrow was created at a time more or less contemporaneous with the shooting, Mr. Jacobson does not know *when* the furrow was created, inasmuch as Officer Novosel describes the Honda going back and forth a number of times.  Mr. Jacobson acknowledged that the  Honda could have gone back and forth a number of times before the furrow was created.  (Devine Decl. Ex. B. - Jacobson Depo. 52:18-58:4; see also Jacobson Depo. 79:16-80:1 "Q. . . .On paragraph three you say that, 'The two furrows found by me on the scene indicate that the vehicle did not move back two feet.'  Now, we know – we know that – you don't know when the furrow was created, correct?  A. Correct.  Q.  So you can't say whether or not that vehicle moved back two feet before that furrow was created, correct? A. Correct.")

Finally, Mr. Jacobson was not able to make any definitive statements about the motion of

Supplemental Trial Brief By Deft. CHP Officer Novosel                    Gonzales v. Novosel, et al.
C-07-04720 CRB

4

the Honda, as the following reflects:

> Q. And if you had a situation like this where the front left portion of the vehicle was hung up on a guy wire, could you have motion from the vehicle going either forwards or backwards as this tire was spinning?
>
> A  Yes.
>
> Q. And do you know the distance of that motion?
>
> A. No, I don't.
>
> Q. Are you able to calculate that distance?
>
> A. No.

(Devine Decl. Ex. B. - Jacobson Depo. 69:5-13)

As reflected by the above testimony, the observations by Officer Novosel and Sheriff's Deputy Peardon are not contradicted by plaintiff's expert.[2]

## II

**DEFENDANT CHP OFFICER MICHAEL NOVOSEL VIOLATED NO CONSTITUTIONAL RIGHT OF PLAINTIFF AND, ALTERNATIVELY, HE IS ENTITLED TO QUALIFIED IMMUNITY**

The facts are undisputed that Officer Novosel used deadly force to respond to and protect himself and others from serious injury or potential death caused by Gonzales' aggressive and continuous violent resistance, all of which occurred while Gonzales was under the influence of illegal drugs.

The Supreme Court has held that when an officer reasonably perceives that a subject, who has shown himself capable of multiple life endangering acts with an automobile, engages in attempts to flee where there are multiple officers and bystanders who might be seriously injured,

---

2. Defendant's percipient and expert witness, CHP Officer Crocker has stated in her report, "Because the anchor and guy wire was located at the left front of the Honda, as the accelerator was depressed further, and the wheels were spinning at a higher speed, the Honda could have been moving in right-to-left or front-to-rear motion. Because the Honda was front wheel drive and the right front was not obstructed by anything directly in front of it, the Honda could have rotated slightly from left to right. All of these actions would have generated noise, debris and some vehicle motion."

the officer is entitled to use deadly force to protect himself and others. *Scott v. Harris*, 550 U.S. __, 127 S.Ct. 1769, 1779, 167 L.Ed.2d 686, 697 (2007) (". . . A police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the *Fourth Amendment*, even when it places the fleeing motorist at risk of serious injury or death.")

Other Circuits have held that police officers may use deadly force when a fleeing suspect appears likely to drive in a manner that places the officer or others at risk. *Smith v. Freland*, 954 F.2d 343, 347-48 (6th cir. 1992) (Officer shot suspect after brief stop where suspect had appeared "trapped" at end of street: "In an instant Officer Schulcz had to decide whether to allow his suspect to escape. He decided to stop him, and no rational jury could say he acted unreasonably."); *Robinson v. Arrugueta*, 415 F.3d 1252 (11th Cir. 2005) (no constitutional violation where subject fatally shot while vehicle moving 1-2 mph toward officer despite estate's claim the officer could have moved away).

Another case with strikingly analogous facts is *Pace v. Capobianco*, 283 F.3d 1275 (11th Cir., 2002), where an officer fired several seconds after the suspect stopped his vehicle. The court held the Officer's conduct was not unreasonable or unconstitutional because the officer shot before he had time to "cool off" and because "reasonable police officers could have believed that the chase was not over" based on the suspect's conduct during the previous chase.[3] (See *Marion v. City of Corydon* (2008 U.S. Dist. Lexis 23342) where earlier this year the Court granted summary judgment in defendants' favor when it concluded, ". . .the undisputed facts show it was reasonable for the officers to fire their weapons as [plaintiff] was still revving the engine, moving the explorer, and trying to gain traction to continue his flight, especially when

---

3. "Briefly stated, the question then is whether, given the circumstances, Davis would have appeared to reasonable police officers to have been gravely dangerous. The answer is 'Yes.' First, we conclude that – given Davis's aggressive use of his automobile during the chase – probable cause existed to believe Davis had committed a felony involving the threatened infliction of serious physical harm: aggravated assault . . . Second, Davis, once he began the chase, never left his automobile or even turned the engine off. By the time of the shooting, Davis had used the automobile in a manner to give reasonable policemen probable cause to believe that it had become a deadly weapon with which Davis was armed." *Id*. at 1281-82.

officers stood in or near the paths of possible escape with the vehicle.")

All of these cases closely mirror the undisputed facts present in this lawsuit.

While the important facts in this lawsuit were previously and extensively set forth in the trial brief, two CDs that contain simulations of the events (*e.g.*, an animated map of the pursuit route with the CHP radio broadcasts and a street view with the CHP radio broadcasts) are forwarded to the court to demonstrate the nature of the high-speed pursuit.  Additionally, the relevant page of the CHP computerized dispatch records are provide, which reflect the high-speed pursuit culminating in the shooting of Gonzales lasted less than five minutes (*i.e.*, from 1:04:23 a.m. to 1:08:08). (Decl. Devine, Exhibit C - CHP CAD Log).  In those few minutes, Gonzales traveled into oncoming traffic lanes (sometimes at speeds of 90 miles per hour) forcing at least four vehicles off the roadway to avoid head-on collisions, and he also attempted to run over Officer Torr when he first lost control of his Honda on Alma Street.  Importantly, during the entirety of the quickly developing events, Gonzales never stopped resisting arrest  and he never ceased his dangerous efforts to escape.[4/]

Nearly two decades ago, the Supreme Court observed, "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)  Only last week, the Ninth Circuit highlighted this same observation in *Porter v. Osborn* 2008 DJDAR 15907.

Under these circumstances no reasonable jurors could conclude that the officers used excessive force.

---

4. "So how does a court go about weighing the perhaps lesser probability of injuring or killing numerous bystanders against the perhaps larger possibility of injuring or killing a single person? We think it appropriate in this process to take into account not only the number of lives at risk, but also their relative culpability. It was respondent, after all, who intentionally placed himself and the public in danger by unlawfully engaging in the reckless, high-speed flight that ultimately produced the choice between two evils that Scott confronted." *Scott v. Harris*, *supra*, 550 U.S. ___.

Supplemental Trial Brief By Deft. CHP Officer Novosel                      Gonzales v. Novosel, et al.
                                                                                                                                       C-07-04720 CRB

7

## CONCLUSION

Given the absence of any undisputed material facts in this lawsuit, Officer Novosel again requests that the Court determine his entitlement to qualified immunity.

Dated: October 30, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California


 /s/ John P. Devine
JOHN P. DEVINE
Deputy Attorney General

Attorneys for Defendant California Highway Patrol Officer Michael Novosel

40283801.wpd
SF2007403115

Supplemental Trial Brief By Deft. CHP Officer Novosel       Gonzales v. Novosel, et al.
C-07-04720 CRB

8