John Houston Scott (SBN 72578)
Lizabeth N. de Vries (SBN 227215)
**SCOTT LAW FIRM**
1375 Sutter, Suite 222
San Francisco, CA 94109
Tel:  415.561.9600
Fax: 415.561.9609


Randolph Daar (SBN 88195)
**ATTORNEY AT LAW**
506 Broadway Street
San Francisco, CA 94133
Tel:  415.986.5591
Fax: 415.421.1331

Attorneys for Plaintiff,
NELSON GONZALES

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NELSON GONZALES,<br><br>    Plaintiff,<br>v.<br><br>MICHAEL NOVOSEL, R. CARLINO, S. CURMI, A. BORDIGON, J. FUKUSHIMA and DOES 1-25, inclusive.<br><br>    Defendants. | Case No.: CV 07-04720 CRB<br><br>**PLAINTIFF'S TRIAL MEMORANDUM**<br><br>Trial Date:  November 3, 2008<br>Time:       8:30 p.m.<br>Place:      Courtroom 8, 19th floor<br>Judge:     Hon. Charles R. Breyer |

## INTRODUCTION

The plaintiff submits this trial memorandum to address three issues:

1.  Evidentiary issues relating to medical bills from the local hospitals and doctors who treated the plaintiff regarding his gunshot wounds and related injuries;

2.  The consequences of defendant's failure to provide the plaintiff with a Rule 26 (expert) report from Dr. Keram; and

3.  To respond to defendant's recent Supplemental Trial Brief.

## DISCUSSION

### I. The Collateral Source Rule Requires the Jury Be Told the True Value of Medical Services Provided to the Plaintiff Rather Than a Medi-Cal Lien's Value

A federal court applies state law when it deals with the collateral source rule. *Gypsum Carrier, Inc. v. Handelsman*, 307 F.2d 525, 535 (9th Cir.1962). In California, the collateral source rule states: "[I]f an injured party receives some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor." *Helfend v. Southern Cal. Rapid Transit Dist.*, 2 Cal.3d 1, 6, 84 Cal.Rptr. 173, 175, 465 P.2d 61 (1970) (citation and footnote omitted).The reasonable cost of the plaintiff's medical care is admissible at trial *even if* it exceeds the amount actually paid and *may* be subject to a post-trial hearing to reduce damages *See, Hanif v. Housing Authority*, 200 Cal.App.3d 635, 246 Cal.Rptr. 192 (1988); *Nishihama v. City and County of San Francisco,* (2001) 93 Cal.App.4th 298, 112 Cal.Rptr.2d 861 (2001); *Greer v. Buzgheia*, (2006) 141 Cal.App.4th 1150, 1156, 46 Cal.Rptr.3d 780.

The question here is whether the value of the plaintiff's medical services should be discounted to the amount Medi-Cal paid on his behalf to assess his damages. Defendant will ask this Court to limit the medical bills only to what the plaintiff, or Medi-Cal, has paid. This would greatly prejudice the jury's ability to calculate his economic *and* non-economic damages.

> If we consider the collateral source rule as applied here in the context of the entire American approach to the law of torts and damages, we find that the rule presently performs a number of legitimate and even indispensable functions. Without a thorough revolution in the American approach to torts and the consequent damages, the rule at least with respect to medical insurance benefits has become so integrated within our present system that its precipitous judicial nullification would work hardship. In this case the collateral source rule lies between two systems for the compensation of accident victims: the traditional tort recovery based on fault and the increasingly prevalent coverage based on non-fault insurance. Neither system possesses such universality of coverage or completeness of compensation that we can easily dispense with the collateral source rule's approach to meshing the two systems. (Cf., e.g., Bilyeu v. State Employees' Retirement System (1962) 58 Cal.2d 618, 629 [24 Cal.Rptr. 562, 375 P.2d 442] (concurring opn. of Peters, J.).) The reforms which many academicians propose cannot easily be achieved through piecemeal common law development; the proposed changes, if desirable, would be more effectively accomplished through legislative reform. In any case, we cannot believe that the judicial repeal of the collateral source rule, as

|   |   |
|---|---|
| 1 | applied in the present case, would be the place to begin the needed changes. |

*Helfend v. Southern Cal. Rapid Transit Dist.*, 2 Cal.3d 1, 13 (1970).

Providing the jury with an artificial number which represents a discounted rate for medical services is unduly prejudicial and is cause for a new trial in state court to recalculate non-economic damages. *See, e.g., Katiuzhinsky v. Perry*, (2007) 152 Cal. App. 4th 1288, 1296. Allowing this to happen would result in the plaintiff being undercompensated. *Id.*

California law applies the collateral source rule to *gratuitous* payments from non-tortfeasors because of the rationale behind the rule:

> The rationale of the collateral source rule thus favors sheltering gratuitous gifts of money or services intended to benefit tort victims, just as it favors insurance payments from coverage they had arranged. **No reason exists in these circumstances to confer a bonanza upon the party causing the injury.**

*Arambula v. Wells*, 72 Cal.App.4th 1006, 1014 (1999) (emphasis added). No reason exists here either. To the contrary, the only reason Nelson Gonzales had to seek Medi-Cal payments was because of the injuries inflicted on him *by this defendant*.

### II. Dr. Keram Should Be Precluded From Testifying Because the Defendant Did Not Provide Plaintiff With Her Expert Report

The parties initially agreed to exchange expert reports on October 3, 2008. At the defendant's request that date was continued to October 10, 2008.

On October 10, 2008 the plaintiff provided the defendant with all reports by his retained experts. The defendant provided reports from some experts, but not others. The plaintiff agreed not to object to a "reasonable" delay in being provided with a video of the "pursuit" and a copy of Dr. Keram's report. Dr. Keram is a psychiatrist retained purportedly for the purpose of evaluating the plaintiff's psychological injuries and mental condition. The plaintiff anticipates, but does not know, if Dr. Keram is also being relied upon to attack the plaintiff's character.

A jury was seated in this case on October 22, 2008. Opening statements and evidence will commence on Monday, November 3, 2008. As of Friday, October 31, 2008, plaintiff has not been provided with a copy of Dr. Keram's report. Accordingly, the plaintiff will not have an

opportunity to take Dr. Keram's deposition, or designate an expert to counter her opinions, before the trial begins. It is foreseeable that the plaintiff will be prejudiced because of this delay. It is also foreseeable that this prejudice cannot be remedied once the plaintiff gives an opening statement and puts on his case.  This Court has informed the plaintiff that he has until Thursday, November 6, 2008 to complete his presentation of evidence. There is simply not enough time to depose Dr. Keram and obtain an expert to rebut Dr. Keram before the plaintiff "rests." Under these circumstances the defendant should be precluded from calling Dr. Keram as a witness. Rule 26 of the Federal Rules of Civil Procedure governs, in part, disclosure of expert testimony as it relates to experts.  Rule 26(b)(4) provides that a party may depose any person who has been identified as an expert, however, if a report from the expert is required, the deposition shall not be conducted until after the report is provided.

      The plaintiff understands that this case has been moving on a "fast track" and that there were delays in completing the plaintiff's deposition and completing three IME's. However, these delays have not prevented other experts from completing and submitting their reports so that they could be deposed, or their opinions could be rebutted, prior to trial.  Basic notions of fairness and due process should prevent the defendant from calling an expert witness whose report was not provided to the plaintiff before the commencement of trial.  Such tactics give the word "sandbag" a whole new meaning. The Federal Rules of Civil Procedure are designed to prevent this type of gamesmanship and are designed to prevent parties from "hiding the ball" and using experts to "ambush" adversaries after a trial has commenced.

### III. The Defendant's Factual and Legal Analysis of This Case is Disputed By The Plaintiff

      The defendant has filed a Supplemental Trial Brief that articulates his factual claims, many of which are disputed by the plaintiff.  The defendant missed his opportunity to file a motion for summary judgment and this Court has ruled, in denying plaintiff's motion for summary adjudication, that triable issues of fact exist.  The plaintiff intends to prove his case through trial testimony, not through a trial brief. The plaintiff will be prepared to argue the "facts" and law after he has put on his case.  As of now, the defendant's supplemental trial brief

is simply an expression of what he hopes the evidence will show. Whether the defendant's case will still be "standing" after evidence has been presented, adverse witnesses have been exposed to the crucible of cross-examination, and experts have testified, remains to be seen.

## CONCLUSION

The plaintiff welcomes the opportunity to brief any issues the Court believes are necessary or appropriate.

SCOTT LAW FIRM

Dated:  October 31, 2008

By:/s/ John H. Scott
JOHN HOUSTON SCOTT,
Attorneys for Plaintiff NELSON GONZALES

F:\Cases\Cases - Active\Gonzales, Nelson\Pleadings\Trial\Trial Brief and Memorandum.10.31.08.doc